# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EUSEBIA BALTAZAR, an individual,<br><br>Plaintiff,<br>v.<br>SEA WORLD PARKS & ENTERTAINMENT LLC, a limited liability company,<br><br>Defendant. | Case No.: 15cv2893-MMA (BLM)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO EXCLUDE TESTIMONY OF PLAINTIFF'S RETAINED EXPERT; AND**<br><br>[Doc. No. 27]<br><br>**DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[Doc. No. 26] |

Plaintiff Eusebia Baltazar ("Plaintiff") brings this action against Defendant Sea World LLC[1] ("Defendant" or "Sea World") alleging two causes of action for negligence and premises liability. *See* Complaint. Defendant moves to exclude the testimony of Plaintiff's retained expert Brad Avrit (Doc. No. 27), and moves for partial summary judgment of Plaintiff's claims. The Court found the matter suitable for determination on

---

[1] Defendant Sea World LLC was erroneously sued as Sea World Parks & Entertainment LLC. Doc. No. 1 at 2.

the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1. For the reasons set forth below, the Court **GRANTS** Defendant's motion to exclude testimony of Plaintiff's retained expert (Doc. No. 27), and **DENIES** Defendant's motion for partial summary judgment (Doc. No. 26).

## FACTUAL BACKGROUND[2]

On December 1, 2013, Plaintiff visited Sea Worl d San Diego ("Sea World") with her family. While walking on the walkway outside of the Journey to Atlantis ride[3] at Sea World, Plaintiff caught her right foot in a concrete expansion seam.[4] As a result, Plaintiff's left foot slipped on the wet walkway, and Plaintiff fell to the ground fracturing and dislocating her right ankle. Sea World employees bandaged Plaintiff's foot and escorted her out of the park.

The parties dispute whether Plaintiff was running or walking at the time of the incident. The parties also dispute the location of Plaintiff's fall. Finally, the parties dispute whether Plaintiff spoke with Sea World employee Maria Miranda on the night of the incident.

Plaintiff commenced this action against Defendant on November 20, 2015 in the Superior Court of the State of California for the County of San Diego. *See* Doc. No. 1. On December 23, 2015, Defendant removed the case to this Court on the basis of diversity jurisdiction and answered Plaintiff's Complaint. *See id.*

/ / /

---

[2] These material facts are taken from the parties' separate statements of undisputed facts and pertinent cited exhibits. Where a material fact is in dispute, it will be so noted. Facts that are immaterial for purposes of resolving the current motion are not included in this recitation.

[3] Journey to Atlantis is a water roller coaster ride that begins with a "splashy 60-foot plunge." *See* https://seaworldparks.com/en/seaworld-sandiego/Attractions/Rides/Journey-to-Atlantis.

[4] Concrete expansion seams (also known as concrete joints) separate slabs of concrete. Expansion seams are used to prevent cracks in the concrete due to the expanding and contracting of the concrete with changes in temperature.

## DEFENDANT'S *DAUBERT* MOTION

On September 22, 2016, Mr. Brad Avrit, P.E., of Wexco International Corporation, a safety engineer and accident reconstruction expert, offered a report providing his opinions regarding Defendant's liability relating to the safety of the subject area at the time of the accident. *See* Doc. No. 27-1, Exh. B; Doc. No. 29-6, Exh. 5. Defendant moves to exclude the opinions of Mr. Avrit in their entirety. Doc. No. 27-7 at 5.[5]

**A.   Plaintiff's Request to Exclude Evidence Pursuant to Rule 37(c)(1)**

As an initial matter, Plaintiff requests the Court strike the declarations of Marc LaHay and Buddy Burton[6] submitted in support of Defendant's *Daubert* motion because Defendant disclosed these witnesses in violation of Federal Rule of Evidence 37(c)(1).

On July 12, 2016, Plaintiff deposed Ms. Darlene Walter, Defendant's person most knowledgeable about maintenance performed and contracts to perform services at the location where Plaintiff fell. *See* Doc. No. 29-3, Exh. 2 at 3; Doc. No. 29-2, Exh. 1 at 2-3. Defendant produced, and Ms. Walter reviewed, six (6) pages of documents including the December 24, 2010 contract with True Champions Construction Services, and invoices dated February 16, 2011, and January 19, 2012. Doc. No. 29-3, Exh. 2 at 3-4. Plaintiff claims that contrary to the declarations of Mr. Burton and Mr. LaHay, Ms. Walter testified that the construction work identified in the six (6) pages of documents consisted of repairing ten spalled[7] areas of concrete, but not that the worked also included acid-etching or mechanical abrading. Doc. No. 29 at 4. Mr. Avrit reviewed Ms. Walter's deposition transcript and based his opinions in the Rule 26 report on her testimony. *Id.* Plaintiff claims, "[a]t no time after receiving Mr. Avrit's Rule 26 report on September 23,

---

[5] All citations refer to the pagination assigned by the CM/ECF system.

[6] On November 9, 2016, Sea World served Amended Initial Disclosures identifying Mr. Lahay and Mr. Burton as individuals with personal knowledge of the acid etching and spall repairs made to the Journey to Atlantis walkway between December 2010 and December 2013.

[7] The term "spalled" refers to areas of broken or chipped concrete.

2016 and/or before taking Mr. Avrit's deposition on November 7, 2016 did Sea World disclose Mr. Burton and Mr. LaHay's information that they now submit to this Court." *Id.* Plaintiff requests the Court strike the Declarations of Mr. Burton and Mr. LaHay pursuant to Federal Rule of Civil Procedure 37(c)(1). *Id.* at 10.

Federal Rule of Civil Procedure 37(c)(1) provides in pertinent part:

> If a party fails to provide information or identify a witness as Required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1).

Here, the Court finds no discovery violation. Defendant first produced the relevant six (6) documents on June 22, 2016. *See* Doc. No. 30-1 at 63-85. Defendant produced the same six (6) documents on July 12, 2016. *See id.* at 86-102. The December 24, 2010 contract states in pertinent part, "*we will clean, etch and mechanically abrade the surface to remove the environmental build up with a special environmentally safe non metallic system.*" Doc. No. 29-4 at 2 (emphasis added). Moreover, the contract provides that True Champions "will work with the Sea World Safety Team to test pre-selected areas before and after to confirm that the slip resistance level meets or exceeds the parks [sic] safety requirements." *Id.*

During Ms. Walter's deposition, Plaintiff's counsel did not question her about the acid etching of the concrete walkway. *See* Doc. No. 29-3 at 9-11. Ms. Walter described ten (10) "areas that have spalled, which means that the concrete has popped out." *Id.* at 10. Plaintiff's counsel then asked Ms. Walter "[a]nything else [the contract] is describing?" *Id.* Ms. Walter answered, "[the contract] identifies courtyard areas, disposal, references [True Champions'] work, the prepping. Do you want me to run through all that, or –" *Id.* Plaintiff's counsel said, "[n]o, I guess I just want – it's in English, but I figured I'd ask you if there was a less technical way of describing the work that they were doing based on that document, if you can describe it?" *Id.* Ms. Walter

1 responded, "Okay. Essentially, it's identification of various areas where the concrete had
2 popped out." *Id.* at 10. Although Ms. Walter did not volunteer any information about
3 acid-etching or mechanical abrading, the documents produced to Plaintiff on two
4 occasions clearly contain information about the maintenance work performed. Plaintiff's
5 failure to question Mr. Walter about the etching and mechanical abrading mentioned in
6 the December 24, 2010 contract does not result in a violation of Rule 37(c)(1).

7 Further, Plaintiff asserts Defendant acted in bad faith by failing to identify and
8 produce Mr. LaHay and Mr. Burton as its persons most knowledgeable about
9 maintenance and repair work. *See* Doc. No. 29 at 5. As Defendant points out, at the time
10 it designated Ms. Walter as its person most knowledgeable in July 2016, it was unaware
11 that Plaintiff would designate an expert who would rely upon slip resistance testing
12 conducted in 2010, several years prior to Plaintiff's fall. *See* Doc. No. 30 at 6.
13 Defendant asserts it "did not realize the significance of the changes made to the walkway
14 surface in 2011, until deposing Mr. Avrit in November 2016." *Id.* On November 9,
15 2016, just two days after Mr. Avrit's deposition, Defendant served Amended Initial
16 Disclosures identifying Mr. Lahay and Mr. Burton as individuals with personal
17 knowledge of the acid etching and spall repairs, respectively. Doc. No. 30-1 at 103-108.
18 The Court previously set November 11, 2016 as the cut-off date for discovery. Doc. No.
19 11 at 2. Because the disclosure took place before the close of discovery, Plaintiff could
20 have deposed Mr. LaHay and Mr. Burton, but failed to do so.

21 In sum, the Court finds no discovery violation because Defendant timely disclosed
22 the relevant six (6) documents outlining the repair work done at the Journey to Atlantis
23 walkway, Plaintiff's counsel did not question Ms. Walter about the etching or mechanical
24 abrading mentioned in the December 24, 2010 contract, Defendant served its Amended
25 Initial Disclosures two days after learning Mr. Avrit has not inspected the subject area,
26 and did so prior to the close of discovery. Accordingly, the Court **DENIES** Plaintiff's
27 request to exclude the declarations of Mr. Lahay and Mr. Burton.
28 ///

**B.     Motion to Exclude Expert Opinions and Testimony of Mr. Avrit**

Defendant moves to exclude the opinions of Mr. Avrit in their entirety because his opinions do not meet the prerequisites for expert testimony admissibility established by Federal Rule of Evidence 702 and *Daubert v. Merrett Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  Doc. No. 27-7 at 5.  While Defendant does not dispute that Mr. Avrit is qualified to testify as an expert in this case, Defendant asserts Mr. Avrit's opinions are unreliable and should be excluded for two reasons: (1) Mr. Avrit's 2010 test results are irrelevant to the conditions at the time of Plaintiff's fall because of intervening changes to the subject walkway; and (2) Mr. Avrit failed to follow testing protocol when conducting his 2010 slip resistance testing.

*1.     Legal Standard*

Rule 702 of the Federal Rules of Evidence provides that expert opinion evidence is admissible if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.  As the Ninth Circuit recently explained:

> Under *Daubert* and its progeny, including *Daubert* II, a district court's inquiry into admissibility is a flexible one. *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013). In evaluating proffered expert testimony, the trial court is "a gatekeeper, not a fact finder." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (citation and quotation marks omitted).
>
> "[T]he trial court must assure that the expert testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" *Id*. at 564 (quoting *Daubert*, 509 U.S. at 597). "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Id*. at 565 (citation and internal quotation marks omitted). "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Id*. at 564 (citation omitted). The judge is

> "supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Alaska Rent-A-Car*, 738 F.3d at 969. Simply put, "[t]he district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." *Id.* at 969-70.

*City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043 (9th Cir. 2014). "Challenges that go to the weight of the evidence are within the province of a fact finder, not a trial court judge. A district court should not make credibility determinations that are reserved for the jury." *Id.* at 1044.

### 2. Analysis

In his Rule 26 report, Mr. Avrit outlines his various findings from the slip resistance testing conducted in 2010. *See* Doc. No. 29-6. Mr. Avrit found that the surface of the subject walkway had a slip resistance index of .32 to .35 when wet from the splash of the Journey to Atlantis water ride. *Id.* at 4. Mr. Avrit indicated that nationally recognized industry standards acknowledge a floor surface is sufficiently slip-resistant if it has a slip resistance of .50 or above. *Id.* at 5. Thus, Mr. Avrit concludes that "the subject walkway was in an unsafe condition at the time of the incident." Doc. No. 29-6 at 6. Further, Mr. Avrit opines that "SeaWorld created the subject unsafe condition by using a walkway surface embedded with pieces of ceramic tile that are slippery when wet in an area that is consistently exposed to water." *Id.* Defendant moves to exclude Mr. Avrit's opinions because Mr. Avrit relies upon slip resistance testing conducted in February 2010, despite the fact that "substantial changes" were made to the location between 2010 and Plaintiff's fall on December 1, 2013. Doc. No. 27-7 at 9.

In *Michaels v. Taco Bell Corp.*, a patron slipped and fell on the floor in a Taco Bell restaurant. 2012 WL 4507953, at *1 (D. Or. 2012). The floor at that location was wet from having been recently mopped. *Id.* Taco Bell moved to exclude the plaintiff's retained expert, Mr. Karlin, from testifying for failure to reliably apply his testing methodology to the facts of the case. *Id.* During Mr. Karlin's deposition, Mr. Karlin admitted he did not know what kind of tile was present in the Taco Bell restaurant when

he tested it. *Id.* at 9.  Moreover, "Karlin failed to satisfactorily explain why, when he had adequate opportunity to acquire and incorporate this knowledge into his testing, he failed to do so." *Id.*  Mr. Karlin also did not explain the reasons he used the testing methods described in his report, and how those various methods are relevant to the conditions of the tile floor present at the time of Plaintiff's fall. *Id.*  The court found Mr. Karlin's report lacked information directly relevant to the court's assessment of the validity of his testing methodology and whether his methodology was reliably applied to the facts of the case. *Id.*  The court issued an order striking Mr. Karlin's report and precluding him from testifying at trial. *Id.* at 11.

Here, the Court finds Mr. Avrit's opinions to be irrelevant and inadmissible for several reasons.  First, Mr. Avrit did not conduct any inspection or slip resistance testing for the sole purpose of forming his opinions in this case.  Instead, Mr. Avrit relied upon slip resistance testing he conducted on February 9, 2010—more than three years prior to Plaintiff's fall.  Doc. No. 27-1 at 90, 92.  Mr. Avrit conducted the 2010 slip resistance testing in connection with his retention as an expert in another case (*Fletcher v. Anheuser Busch Inc.*).  Mr. Avrit admitted that after being retained as an expert in this case, he had sufficient time to go to the scene and visit it, but never did. *Id.* at 90.  Similar to *Michaels*, in which Mr. Karlin failed to acquire additional information about the type of tile present at the Taco Bell restaurant, Mr. Avrit had an opportunity to inspect the Journey to Atlantis walkway prior to issuing his opinions, but did not do so.

Second, Mr. Avrit claimed the conditions of the surface area where Plaintiff fell are substantially similar to the conditions of the walkway at the time of Mr. Avrit's February 2010 inspection.  Doc. No. 27-1 at 96.  Plaintiff asserts the tiles and glass embedded in the decorative bands on the Journey to Atlantis walkway have remained the same since 2010. *See* Doc. No. 29 at 5-6.  However, Mr. Avrit admits that he reviewed the six (6) documents containing the 2010 True Champions services contract, the February 2011 invoice, the 2012 invoice, and a September 2013 maintenance work order. Doc. No. 27-1 at 93-94.  These documents outline the various changes to the walkway,

including acid-etching, mechanical abrasion, and the jackhammering and re-pouring of spalls completed in February 2011.  Doc. No. 27-3 at 7; 29-4 at 3.  Additionally, in January 2012, True Champions performed additional repair and resurfacing work in the Journey to Atlantis Soak Zone walkway.  Doc. No. 27-3 at 11; Doc. No. 29-4 at 4.  Finally, in September 2013, Conan Construction cut, removed, and re-poured numerous areas of spalled concrete, *including portions of the aggregate concrete inlaid with pieces of blue ceramic tile, and stones and/or shells*, in the Journey to Atlantis Soak Zone walkway.  Doc. No. 27-3 at 13; Doc. No. 29-4 at 5 (emphasis added).

Further, when asked at his deposition whether Mr. Avrit knew what, if any, changes had been made to the surface area where Plaintiff fell, Mr. Avrit replied, "[n]o." Doc. No. 27-1 at 96.  Mr. Avrit testified that he has no scientific data regarding the slip resistance of the walkway at or near the time of Plaintiff's fall.  *Id.* at 106.  Rather, Plaintiff's description of her fall serves as "circumstantial evidence" that suggests the surface area where Plaintiff fell was substantially similar to Mr. Avrit's findings during his last inspection in February 2010.  *Id.*  Similar to *Michaels*, in which the expert failed to acquire and incorporate critical information into his testing, Mr. Avrit failed to inquire about what changes were made between 2010 and Plaintiff's fall in 2013, failed to inspect the subject walkway, and failed to conduct additional testing as to the condition of the walkway at or near the time of Plaintiff's fall and incorporate those findings into his report.

Third, in his expert report, Mr. Avrit recommended "acid-etching the tiles embedded in the subject walkway would make the subject walkway slip resistant when wet." *Id.* at 85.  However, at the exact location Mr. Avrit conducted his February 9, 2010 testing, Sea World did acid-etch the Journey to Atlantis Soak Zone walkway prior to Plaintiff's fall in December 2013.  LaHay Decl. ¶¶ 5, 7.  Sea World also jackhammered out, removed, and re-poured portions of the walkway prior to Plaintiff's fall on December 1, 2013.  Burton Decl. ¶ 6.  Mr. Avrit, having received and reviewed invoices suggesting significant changes, did not re-inspect the walkway because he did not "know that that

would yield any relevant information." Doc. No. 27-1 at 95.

Finally, when asked during his deposition whether the plaintiff in *Fletcher* and Plaintiff in this case fell in the same location, Mr. Avrit testified, "I think it -- I can't say with certainty, but I expect that it would have similar surface characteristics given my observations of how that area was constructed and maintained." Doc. No. 27-1 at 98. Plaintiff argues the surface area on which the *Fletcher* plaintiff and Ms. Baltazar slipped "is substantially similar because of the tile that is embedded above the surface of the concrete." Doc. No. 29 at 9. Yet, as noted above, Mr. Avrit acknowledges he does not know what changes were made to the walkway. *See* Doc. No. 27-1 at 96. Mr. Avrit's failure to inspect or conduct additional testing raises serious questions about the relevancy of his opinions in this case. Plaintiff cites no case law supporting the notion that an expert's opinions are relevant and admissible when evidence suggests the basis for the expert's opinions have significantly changed. As such, the Court finds Mr. Avrit's testimony and report are irrelevant and inadmissible.

Plaintiff argues that pursuant to Federal Rule of Evidence 703[8], Mr. Avrit can rely on Defense expert Mr. Carl Beels' 2016 slip resistance test results to support his opinion that the blue tile and glass embedded in the walkway is slippery when wet. Doc. No. 29 at 8. However, Rule 703 "merely relaxes, for *experts*, the requirement that witnesses have personal knowledge of the matter to which they testify." *Claar v. Burlington Northern R. Co.*, 29 F.3d 499, 501 (9th Cir. 1994) (emphasis added); *see also Daubert*, 509 U.S. at 591 (noting that Rule 703's "relaxation of the usual requirement of firsthand knowledge. . . is premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline."). Rule 703, however, "does not deal with the authority of the court to scrutinize an expert's methodology or reasoning."

---

[8] Rule 703 provides in pertinent part, "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703. Moreover, "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." *Id.*

*Claar*, 29 F.3d at 501. Because the Court finds Mr. Avrit does not meet the prerequisites for expert testimony admissibility under Rule 702, the relaxed requirements of Rule 703 do not apply to Mr. Avrit.

In sum, the Court finds that Mr. Avrit's testimony lacks the underlying reliability necessary under *Daubert* and Rule 702 to be relevant to the jury in determining whether Defendant is liable. "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *General Elec. v. Joiner*, 522 U.S. 136, 146 (1997). Accordingly, based on the foregoing, the Court **GRANTS** Defendant's motion to exclude Plaintiff's expert testimony. Mr. Avrit's expert report is stricken and Mr. Avrit is precluded from testifying at trial.[9]

### DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**A.   Requests for Judicial Notice**

As a preliminary matter, both parties filed requests for judicial notice. For the reasons set forth below, the Court **GRANTS** the parties' respective requests for judicial notice.

*1.   Legal Standard*

Generally, a court must take judicial notice if a party requests it and supplies the court with the requisite information. Fed. R. Evid. 201(d). "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see Mack v. South Bay Beer Distributors,* 798 F.2d 1279, 1282 (9th Cir. 1986) (citing *Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd.,* 245 F.2d 67, 70 (9th Cir. 1956)). While a court may take judicial notice of matters of public record, it

---

[9] Because the Court finds Mr. Avrit's report and opinions to be unreliable, the Court need not reach Defendant's additional basis for exclusion—Mr. Avrit's alleged failure to adhere to protocol when conducting his 2010 slip resistance testing.

may not take judicial notice of a fact that is subject to reasonable dispute. Fed. R. Evid. 201(b); *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001). For example, "when a court takes notice of another court's opinion, it may do so not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *Lee*, 250 F.3d at 690.

### 2. *Defendant's Request for Judicial Notice*

Defendant requests the Court take judicial notice of two documents (Exhibits A-B) in support of its motion for partial summary judgment. Doc. No. 26-4 (hereinafter "DRJN"). Exhibit A is a copy of City of San Diego Standard Drawing G-10: Concrete Joint Details. Exhibit B is a copy of City of San Diego Standard Drawing SDG-109: Sidewalk Joint Locations. Plaintiff did not file an opposition to Defendant's request for judicial notice.

The Court finds Exhibits A and B to be matters of public record, the authenticity of which is not subject to reasonable dispute. *See* Fed. R. Evid. 201(b). Accordingly, the Court **GRANTS** Defendant's request for judicial notice.

### 3. *Plaintiff's Request for Judicial Notice*

Plaintiff requests the Court take judicial notice of civil action *Fletcher v. Anheuser Busch Inc.*, case number 09cv6376, pending in the United States District Court, Central District of California in support of her opposition to Defendant's motion for partial summary judgment. Doc. No. 28-2. Defendant did not file an opposition to Plaintiff's request for judicial notice.

To the extent that Plaintiff seeks to establish the existence of the civil action pending in the Central District, the Court **GRANTS** Plaintiff's request for judicial notice. However, to the extent that Plaintiff seeks to provide supplemental authority for the Court's consideration, such a request is misguided. *See In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1067 (N.D. Cal. 2010) ("[t]he court may take judicial notice of the existence of unrelated court documents, although it will not take judicial notice of such documents for the truth of the matter asserted therein."); *see also Garcia v.*

*California Supreme Court*, 2014 WL 309000, at *1 (N.D. Cal. Jan. 21, 2014) ("a request for judicial notice is not a proper vehicle for legal argument.").

Accordingly, the Court **GRANTS** Plaintiff's request for judicial notice of *Fletcher v. Anheuser Busch Inc.*, case number 09cv6376, for the limited purpose of establishing the existence of the case.

**B.     Motion for Partial Summary Judgment[10]**

Defendant claims Plaintiff has alleged at least three theories of liability that, working independently or in conjunction, caused her fall: (1) Plaintiff's right shoe caught an expansion seam in the concrete walkway; (2) Plaintiff's right shoe caught an uneven or spalled concrete expansion seam in the walkway; and (3) Plaintiff's left foot slipped. Defendant moves for partial summary judgment as to those portions of Plaintiff's negligence and premises liability causes of action that are based upon her first two theories of liability.  Doc. No. 26-6 at 5.

*1.     Legal Standard*

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the initial burden of establishing the basis of its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party has "the burden of showing the

---

[10] Plaintiff objects to Defendant's submission of the deposition testimony of herself, Mr. Avrit, and Sea World employee Maria Miranda, on the grounds that the deposition transcript excerpts did not include Reporter's Certifications in compliance with *Orr v. Bank of America*, 258 F.3d 764 (9th Cir. 2002). Doc. No. 28 at 2-4.  Upon the filing of Defendant's motion, however, Defendant lodged with the Court the deposition transcripts of these individuals, all of which included the Reporter's Certifications. *See* Doc. No. 26-5.  As such, Plaintiff's objections are **OVERRULED**.

absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). A fact is material if it could affect the outcome of the suit under applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* at 248.

The party opposing summary judgment cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'" *Estate of Tucker v. Interscope Records*, 515 F.3d 1019, 1030 (9th Cir.), cert. denied, 555 U.S. 827 (2008) (quoting Fed. R. Civ. P. 56(e)).

### 2. *Concrete Expansion Seam Theory of Liability*

In her Complaint, Plaintiff alleges Defendant "breached [its] duty of care to Plaintiff when [it] permitted *cracked* and wet concrete pavement to exist where customers and patrons, including Plaintiff, were invited to pass." Complaint ¶¶ 23, 34 (emphasis added). Defendant argues that to the extent that any defect in the concrete expansion seams caused or contributed to Plaintiff's fall, such defects were trivial and as a result, Defendant owes Plaintiff no duty of care pursuant to California law.[11] Plaintiff claims "Defendant failed to carry its burden" as to the condition of the expansion seams at the time of Plaintiff's fall. Doc. No. 28-1 at 4.

"It is well established in California that although a store owner is not an insurer of the safety of its patrons, the owner does owe them a duty to exercise reasonable care in keeping the premises reasonably safe." *Ortega v. Kmart Corp.*, 36 P.3d 11, 14 (Cal. 2001). In order for a plaintiff to establish premises liability on a negligence theory, a

---

[11] The parties agree Plaintiff's claims are governed by California law. *See* Doc. Nos. 26-6 at 5, 28-1 at 6; *see also Erie Railroad v. Tompkins*, 304 U.S. 64, 71 (1938) (noting that a federal court sitting in diversity jurisdiction must apply the substantive law of the forum state).

plaintiff must prove: (1) duty; (2) breach; (3) causation; and (4) damages. *Baker v. Major League Baseball Props., Inc.*, 2009 WL 291249, at *4 (S.D. Cal. 2009) (citing *Ortega*, 36 P.3d at 14). "[T]he question whether a duty of care exists, the breach of which may constitute negligence, is a question of law." *Brown v. Nagata*, 2009 WL 5218036, at *3 (N.D. Cal. 2009). California, however, has recognized that "persons who maintain walkways, whether public or private, are not required to maintain them in an absolutely perfect condition." *Ursino v. Big Boy Restaurants*, 237 Cal. Rptr. 413, 415 (Cal. Ct. App. 1987). Rather, under the trivial defect doctrine[12], "[t]he duty of care imposed on a property owner, even one with actual notice, does not require the repair of minor defects." *Id.* "Although sometimes referred to as the trivial defect defense, the trivial defect doctrine is 'not an affirmative defense but rather an aspect of duty [ ] plaintiff must plead and prove.'" *Kasparian v. AvalonBay Cmtys.*, 66 Cal. Rptr. 885, 896 (Cal. Ct. App. 2007).

In *Ursino*, a restaurant customer tripped over a raised section of concrete in the parking lot and fractured her hip. 237 Cal. Rptr. at 413. Importantly, the parties in that case stipulated to the location of the plaintiff's trip and fall, that the edge of the cement section in question "was raised no higher than three-fourths of an inch," and that the thirty-two (32) photographs submitted "accurately depicted the sidewalk in question on the day of the accident." *Id.* at 414. The restaurant moved for summary judgment, arguing that it owed the plaintiff no duty because the three-fourths of an inch height differential amounted to only a trivial defect. *Id.* at 413. The court affirmed the trial court's grant of summary judgment, noting that reasonable minds could not differ and that the defect in question was trivial. *Id.* at 414-15.

---

[12] The trivial defect doctrine originated to shield public entities from liability where conditions on public property create a risk of such a minor, trivial or insignificant nature in light of the surrounding circumstances. *Kasparian*, 66 Cal. Rptr. at 896. The trivial defect doctrine, however, "has been expanded to embrace actions against private landowners." *Id.*

Here, Defendant has failed to meet its burden of demonstrating the absence of a genuine issue of material fact exists as to the triviality of any defect in the expansion seams. Notably, the parties dispute the location of Plaintiff's fall. In fact, Plaintiff claims she never spoke to Ms. Miranda on the night of the incident or pointed to Ms. Miranda where she fell. Baltazar Decl. ¶¶ 4-7. Thus, it will be a jury's role at trial to determine the location of Plaintiff's fall. However, even assuming that Plaintiff fell in the location Defendant contends, the evidence Defendant proffers in support of its motion is insufficient to establish the absence of a genuine issue of material fact on this theory of liability. In support of Defendant's motion, Defendant submits testimony from Plaintiff's deposition and the declaration of Maria Miranda, a Sea World employee.[13]

At her deposition, Plaintiff testified that she caught her right foot in a concrete expansion seam prior to her fall. *See* Doc. No. 26-2 at 7. Concrete expansion seams are required by applicable building codes and industry standards. DRJN, Exhs. A-B. Further, Ms. Miranda claims that on the night of December 1, 2013, she interviewed Plaintiff after her fall. Miranda Decl. ¶ 3. "During the interview, Plaintiff told me the exact location where she fell. Based thereon, I photographed the location." Miranda Decl. ¶ 4. Ms. Miranda's two photographs from the night of the incident are attached to her declaration as Exhibit 1. Miranda Decl. ¶ 4, Exh. 1. Defendant argues the two photographs show that "the concrete surface is free of any defects and show typical expansion seams." Doc. No. 26-6 at 8. Further, Ms. Miranda contends that "[o]n the night of the incident, I inspected the location where Plaintiff told me she fell. I did not see any spalls, cracks, holes, gouges, or any deformities in the concrete walkway in the location where Plaintiff fell." Miranda Decl. ¶ 6. Ms. Miranda also submits a third photograph, which she did not take on the night of the incident, "depicting a bird's eye

---

[13] Defendant also submits deposition testimony from Plaintiff's retained expert, Brad Avrit, in support of its motion for partial summary judgment. *See* Doc. No. 26-6 at 8. However, for the reasons outlined above in the Court's ruling on Defendant's *Daubert* motion, the Court declines to consider such testimony.

view of the subject walkway," wherein Ms. Miranda marked the location where Plaintiff fell.  Miranda Decl. ¶ 5, Exh. 2.

Unlike *Ursino*, in which the court reviewed thirty-two (32) photographs, and considered the three-fourths of an inch height differential between the slabs of concrete in question, Defendant submits only two photographs taken on the night of the incident, and does not submit any evidence of a height differential between the expansion seams.  In fact, Defendant admits that "[i]n the instant case, *there is no evidence that any concrete expansion seams had any height differential . . .* "  Doc. No. 26-6 at 8 (emphasis added).  While Ms. Miranda claims she did not observe any spalls or cracks on the night of the incident, she does not indicate whether there was any height differential between the concrete expansion seams.  The cases Defendant cites in support of its motion all involved situations in which the parties submitted, and the courts relied upon, evidence of the height differential between the concrete slabs or expansion seams in question.  *See Ness v. San Diego*, 301 P.2d 410, 410 (Cal. Ct. App. 1956) (finding a height differential of seven-eighths of an inch to be a trivial defect); *Whiting v. Nat'l City*, 69 P.2d 990, 990 (Cal. 1937) (finding a three-quarter inch height differential to be trivial).

The Court also finds the photographs Defendant submitted to be insufficient for Defendant to meet its initial burden.  While the photographs depict an aerial or overhead view of the expansion seams at the alleged location of Plaintiff's fall, Defendant does not submit any photographs taken at ground level, which could reveal a height differential between the expansion seams.  The overhead perspective does not provide the Court with sufficient context to evaluate the depth and levelness of the expansion seams.  As such, Defendant has presented insufficient evidence to establish the absence of a genuine issue of material fact.  *See Kasparian*, 66 Cal. Rptr. at 896 ("Summary judgment cannot be based on photographs where the reviewing court concludes either reasonable minds might differ as to whether the photographs correctly depict the alleged defect and the surrounding circumstances. . .").

In viewing this record in the light most favorable to Plaintiff, the Court finds

Defendant has failed to meet its burden of demonstrating the absence of a genuine issue of material fact. As such, summary judgment on this theory of liability is inappropriate. Accordingly, the Court **DENIES** Defendant's motion for partial summary judgment as to Plaintiff's concrete expansion seam theory of liability.

### *3.     Uneven and/or Spalled Expansion Seam Theory of Liability*

Defendant also moves for summary judgment as to Plaintiff's uneven and/or spalled expansion seam theory of liability. As noted above, Plaintiff alleges "the front tip of [her] right shoe became stuck in a crack in the concrete surface, and she lost her balance." Complaint ¶ 16. As a result, Plaintiff "slipped in a puddle of water" and fell. Complaint ¶ 17. Further, Plaintiff claims Defendant made "no effort" to "fill in the gaps in the concrete pavement." Complaint ¶¶ 24, 35. Defendant argues no triable issue of material fact exists as to whether the expansion seams in the area where Plaintiff fell were spalled or uneven. Doc. No. 26-6 at 8. Plaintiff, however, asserts Defendant failed to carry its burden as to the condition of the expansion seams at the time of Plaintiff's fall. Doc. No. 28-1 at 4.

Here, for similar reasons as those outlined above, Defendant fails to meet its initial burden of demonstrating the absence of a genuine issue of material fact as to the spalled or uneven nature of the expansion seams. In support of Defendant's motion for summary judgment on this theory of liability, Defendant again submits testimony from Plaintiff's deposition and Ms. Miranda's declaration. When asked if there was anything wrong with the concrete in the area where Plaintiff's foot caught the cement, Plaintiff replied, "[j]ust the compartments." Doc. No. 26-2 at 8. When asked if by the term "compartments" Plaintiff meant the seams between the cement, Plaintiff replied, "[y]es." *Id.* In summarizing this testimony, Defendant asserts, "Plaintiff testified in her deposition that the expansion seams in the area were neither uneven nor spalled at the time of her fall." Doc. No. 26-6 at 8.

Additionally, as outlined above, Ms. Miranda indicated that on the night of the incident, she "did not see any spalls, cracks, holes, gouges, or any deformities in the

concrete walkway in the location where Plaintiff fell." Miranda Decl. ¶ 6. Further, Defendant submits the two photographs Ms. Miranda took on the night of the incident. Thus, Defendant contends it "has satisfied its burden of proof" that no triable issue of fact exists as to the condition of the expansion seams at the time of Plaintiff's fall. Doc. No. 26-6 at 9. Defendant asserts the burden now shifts to Plaintiff to present specific facts showing that there is a genuine issue for trial. *Id.* at 10. The Court disagrees.

Contrary to Defendant's assertions, Plaintiff did not testify at her deposition that the expansion seams were neither uneven nor spalled at the time of her fall. Additionally, Defendant admits that "[i]n the instant case*, there is no evidence* that any concrete expansion seams had any height differential, spall, or other defect." Doc. No. 26-6 at 8 (emphasis added). The absence of any evidence indicating a spall or uneven seams, however, is insufficient for Defendant to rely on at the summary judgment stage. Defendant bears the burden of demonstrating the absence of a genuine issue of material fact. Moreover, Ms. Miranda did not comment on whether the expansion seams were uneven on the night of the incident. Finally, the Court finds the photographs submitted by Ms. Miranda and her accompanying declaration are inadequate to establish the absence of a genuine issue of material fact as to the condition of the concrete expansion seams on December 1, 2013. As noted above, the photographs only depict and overhead view of the expansion seams in question. While the photographs do not appear to depict any cracked surfaces surrounding the expansion seams, Defendant does not submit any photographs taken at ground level which could reveal any uneven seams.

Without additional evidence as to the condition of the subject walkway on the night of the incident, the Court finds summary judgment on this theory of liability is not appropriate. *See Adickes*, 398 U.S. at 158 ("Given these unexplained gaps in the materials submitted by [the moving party], we conclude that [the moving party] failed to fulfill its initial burden of demonstrating . . . a critical element in this aspect of the case . . ."). Accordingly, the Court **DENIES** Defendant's motion for partial summary judgment as to Plaintiff's uneven and/or spalled expansion seam theory of liability.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's motion to exclude the testimony of Mr. Avrit, Plaintiff's retained expert. Further, the Court **DENIES** Defendant's motion for partial summary judgment.

**IT IS SO ORDERED.**

Dated: March 16, 2017

HON. MICHAEL M. ANELLO
United States District Judge